**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Vonnie Darin Darby, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Tim Schuetzle, Warden, | ) | |
| | ) | Case No.  1:08-cv-110 |
| Defendant. | ) | |

## I.    BACKGROUND

### A.    Procedural background

Plaintiff Vonnie Darin Darby (Darby) is an inmate at the North Dakota State Penitentiary (NDSP).  He initiated this *pro se* action by complaint on December 29, 2008, alleging violations of 42 U.S.C. § 1983.  (Doc. Nos 2 & 7).  Darby filed a "supplement" to his complaint on January 27, 2009, alleging that his "double jeopardy rights were violated."  (Docket No. 10).  On April 3, 2009, the court entered an order permitting Darby to amend his complaint to include demands for compensatory damages, punitive damages, and injunctive relief.  (Doc. No. 25).  The amended complaint was filed on April 3, 2009.  (Doc. No. 26).

Darby contends that NDSP officials violated his constitutional rights by requesting that he submit to a mental health appraisal and imposing sanctions when he refused.  His amended complaint reads, in pertinent part, as follows:

> Claim No. 1: Malicious Prosecution:  Plaintiff was issued an Incident Report on 9.19.07 for refusing to sign a document/form that would of violated his equal protection, due process and subjected him to waive his right not to self-incrimination rights. Said document requested  plaintiff's signature as consent to evaluate him for determination of any treatment needed, and allowing any self-admitting confessions

1

> or determinations by staff to be used against plaintiff in forms of institutional living benefits, programs, transfers, employment, or recommendations, etc. Incident Report was malicious, because Plaintiff was not out of DOC&R system for over 3 yrs as their DOC&R, Rules/Policies-ACA #4-4464 - 4-4469. Plaintiff was released on June 25, 2005, & returned Aug. 2007.
>
> Claim No. 2: Loss of Right to Earn Good-Time, Living & Employment Benefits from the Prison Industry and Increased Earnings: Because Plaintiff was found guilty of "refusing treatment" he was loss the right to earn Good-Time, be employed (sic) in Rough Riders Industry, to earn an increased salary, placed in Perferred (sic) Housing, Afternoons Rec., increase in Custody Level Points, which in turn delayed the Plaintiff's opportunity and entitlement to be placed in minimum custody Farm Institution and Work Release Center. Plaintiff's equal protection, due process and right to be free from cruel & unusual punishment Const'al (sic) Rights were violated by finding him guilty of "treatment refusal" when he had not been professionally diagnosed as needing such or being subject to such mandatory assessment.
>
> Claim No. 3: Right to Call Witness: Barb Brieland, a DOC&R Program Manager, in Fargo, ND, gave sworn testimony at Plaintiff's sentencing hearing that led to the Court finding that there was no available treatment in the penitentiary for the Plaintiff. The Defendant, without having the benefit of any information to dispute such or motivation to question Brieland or review Plaintiff's sentencing file, made an uneducated determination disputing the Courts & Brieland findings, and doing so without allowing Plaintiff to present witness via in-person, telephone, or ITV, violating Plaintiff's Confrontation Clause Rights/Entitlements, and Due Process rights by not providing explanation for refusing to call said witness.
>
> Claim No. 4: Equal Protection & Retaliation: In Plaintiffs 2005 imprisonment, he had a complete assessment done and it was determine that no treatment was needed. When, as a new arrival, in 2007, he refused to sign paper to be evaluated (which had not been the 3 yr requirement, plus refusing to sign paper is not an admission or professional conclusion as treatment being needed), the Defendant punish the Plaintiff by subjecting him to all deprivations mention within, and by subjecting him to conditions, treatment & procedures that others have not under the same circumstances.

(Docket No. 26).

The only named defendant is NDSP Warden Timothy Shuetzle, who is sued in both his individual and official capacities. In his amended complaint, Darby seeks monetary damages,

punitive damages, restoration of the good-time credit that he claims he lost as a result of the allegedly unconstitutional action, the ability to earn good time going forward, reimbursement for his time, expenses, and lost wages, and injunctive relief preventing future similar violations. (Docket No. 26).

On March 6, 2009, defendant moved for summary judgment. (Doc. No. 19). An interlocutory appeal contesting the court's denial of counsel delayed its consideration. Judge Hovland has referred the motion to the undersigned for preliminary consideration.

### B.     Incontestable facts

Unless otherwise indicated, the following facts are either uncontested, have not been refuted by admissible evidence, or no reasonable juror could reach a contrary finding after giving the non-moving party the benefit of all reasonable inferences.

Darby arrived at the NDSP on August 30, 2007. The record does not specify what crimes he committed. This was not Darby's first experience with the North Dakota Department of Corrections (DOCR) or the NDSP.

The DOCR has a policy requiring all inmates to undergo a mental health appraisal within 14 days of their arrival. The purpose of the policy is to help the DOCR identify appropriate rehabilitation and treatment for the inmate and also to acquire information to better protect staff and other inmates. (Doc. No. 22, ¶ 3).

When Darby arrived at the NDSP, he refused to participate in the mental health appraisal. (Doc. No. 22, Exs. 2 & 2b). Dan Wrolstad met with Darby on September 18, 2007, regarding his refusal to be assessed for treatment. Wrolstad explained to Darby the possible consequences of his refusal, including the loss of his ability to earn good time, but Darby continued in his refusal to

complete the assessment and argued that the NDSP could use his prior assessment. (Doc. No. 22, Ex. 2b).

On September 19, 2007, Jodi Molenda, a licensed addiction counselor, completed an Incident Report for Darby's failure to comply with the assessment. The Incident Report stated as follows:

> Mr. Darby was met in the Treatment Department on this date in regards to him refusing to complete the assessment. I spoke with Mr. Darby and explained to him that I was meeting with him to discuss his refusal to complete the assessment. He stated he did not refuse to complete the assessment but is refusing to sign any papers. He th[e]n stated he completed the assessment in 2005 and stated I can use that assessment. I explained to him that we need an assessment with updated information. I th[e]n explained to Mr. Darby the consequences of refusing the complete the assessment, which is loss of good time and a write up. He stated he understood the consequences. I also asked Mr. Darby to sign the refusal to participate in intake assessment process form and he refused to sign this as well. (see attached) Mr. Darby was informed that he will be receiving a write-up. Mr. Darby was also spoken to on September 18, 2007 by Dan Wrolstad about refusing to complete the assessment and during this discuss[ion] he was also explained the consequences of refusing to complete the assessment.

(Doc. No. 22, Ex. 2).

Acting Captain Daniel P. Ebach was assigned the investigation of the Incident Report. He met with Darby on September 19, 2007, and provided him with a copy of the report. Darby advised Ebach that the report was accurate. (Doc. No. 22-2, Ex. 3).

Darby was next provided with a notice of a hearing before the Adjustment Committee. Darby indicated he did not wish to have a staff representative at the hearing, but wanted Barbara Breiland to be called as a witness, explaining she could testify that the treatment he needed was not available at the NDSP. Breiland is a probation and parole officer in Fargo, North Dakota, some 200 miles distant from the NDSP in Bismarck. (Doc. No. 22-2, Ex. 4).

The disciplinary hearing was conducted by the Adjustment Committee on September 24, 2007. Darby was present. He again requested that the Committee call Breiland as witness, advising

4

that Breiland had testified during his sentencing that the DOCR does not offer treatment that meets his needs. The Committee did not call Breiland, concluding that the NDSP needed to complete its own assessment using its treatment department personnel. (Doc. No. 22-2, Ex. 2).

The Committee found that Darby had refused to complete the assessment as alleged and recommended to the Warden that Darby's ability to earn good time stop until he complied with "treatment," which was a form recommendation stamped on the face of the Committee's written determination. (Doc. No. 22-2, Ex. 2).

Warden Schuetzle approved the Committee's recommendation on September 25, 2007. (Doc. No. 22-2, Ex. 2). Darby filed an administrative appeal. In his appeal, Darby argued that Brieland had testified at his sentencing hearing that the DOCR does not have treatment available to meet his needs and that the judge found the testimony to be credible. He also stated that he "never refused treatment," but only refused to sign papers that he claimed were the same as the ones he completed for an assessment in 2005. (Doc. No. 22-2, Ex. 6).

Warden Schuetzle denied Darby's appeal, explaining that, irrespective of what Breiland may have said at Darby's sentencing, the NDSP is entitled to make its own assessment as to whether the NDSP can meet Darby's treatment needs using its treatment staff. Schuetzle also stated that, if Darby cooperated with the assessment and NDSP treatment staff determined the NDSP could not meet his treatment needs, he would likely be placed on the not amenable-to-treatment list and could earn his good time. (Doc. No. 22-2, Ex. 6).

Darby appealed Warden Schuetzle's denial to the DOCR Director, asserting the same arguments he had made to Schuetzle. (Doc. No. 22-2, Ex. 7). The Director agreed with Schuetzle's decision and denied Darby's appeal on October 9, 2007. (Doc. No. 22-2, Ex. 8).

Darby's contention during his administrative appeal, and again in this action, that he never refused treatment and only refused to sign the papers required for his mental health assessment, is both beside the point and disingenuous. Here, Darby was disciplined for his refusal to cooperate with the mental health assessment - not the refusal of treatment. That being said, Darby was also opposed to any treatment, as evidenced by his wanting to call Brieland, purportedly, to explain why the NDSP did not provide suitable treatment.

## II.  DISCUSSION

The court is familiar with the well-established principles that govern the court's consideration of the defendant's motion for summary judgment and they need not be repeated here. See, e.g., Uhiren v. Bristol-Meyers Squibb Company, Inc., 346 F.3d 824, 827 (8th Cir. 2003). For the reasons set forth below, Darby has no claim for relief based upon the incontestable facts. Consequently, the complaint should be dismissed with prejudice.[1]

### A.  Substantive due process

Darby claims he lost the right to earn future "good time" and certain other residential and employment benefits as a result of NDSP officials "finding him guilty of 'treatment refusal' when he had not been professionally diagnosed as needing such or being subject to such mandatory assessment." Darby claims this amounted to a violation of due process.

---

[1] In moving for summary judgment on the merits, the defendant has not argued the "Heck bar," see Edwards v. Balisok, 520 U.S. 641, 646 (1997); Entzi v. Redmann, 485 F.3d 998,1003 (8th Cir. 2007); Portley-El v. Brill, 288 F.3d 1063 (8th Cir. 2002), which, *if* applicable, ordinarily would require a dismissal without prejudice of the affected claims, see, e.g., Blaise v. Smith, 2010 WL 88557, at *1 (8th Cir. 2010); Sheldon v. Hundley, 83 F.3d 231, 234 (8th Cir. 1996). In defendant's answer, the Heck bar was not specifically mentioned, but defendant did assert the defense of failure to state a claim. (Doc. No. 18).
   There is authority that the Heck bar can be waived by the defendant. E.g., Kramer v. Village of North Fond du Lac, 384 F.3d 856, 862 (7th Cir. 2004); cf. Muhammad v. Close, 540 U.S. 749, 755 (2004). And, undoubtedly, there are cases where a defendant wants to address the merits and put an end to the matter.

Even if it is assumed that Darby had a liberty interest at stake,[2] this claim fails for several reasons. First, it is not supported by the facts. As already discussed, Darby was disciplined for failing to participate in an assessment to determine whether treatment was required - not for having refused treatment. Second, Darby acknowledged the accuracy of the incident report, and it is clear that he refused to participate in the mental health assessment. Consequently, there is more than "some evidence" supporting the administrative conviction. Bandy-Bey v. Crist, 578 F.3d 763, 767 (8th Cir. 2009) (per curiam) (requirements for establishing a violation of substantive due process). Third, the sanctions imposed do not "shock the conscience." Id.

**B.     Procedural due process**

In the context of prison disciplinary proceedings, the due process required when a liberty interest is at stake is that:

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.... [In addition,] the findings of the prison disciplinary board [must be] supported by some evidence in the record.

---

[2] It is doubtful that Darby has a liberty interest with respect to either the loss of future good-time credits or the residential and employment privileges he claims he could have earned, but for the discipline imposed. The Due Process Clause by itself does not create a protected liberty or property interest in the right to earn good time, see e.g., Wolff v. McDonnell, 418 U.S. 539, 557 (1974), and the right to earn future good time appears not to be an "atypical and significant hardship" that would meet the threshold established in Sandin v. Conner, 515 U.S. 472, 483-486 (1995), for triggering federal due process protections. E.g., Johnson v. Ward, 76 Fed.Appx. 858, 860 (10th Cir. 2003) (unpublished per curiam); Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir.1996); Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995); Mittelstadt v. North Dakota Dept. of Corrections, No. 3:07-cv-26, 2008 WL 4491959, at *3 (D.N.D. Oct. 2, 2008) (citing Luken v. Scott, supra); but cf. Freitas v. Ault, 109 F.3d 1335, 1337-1338 (8th Cir. 1997) (concluding that the loss of ability to earn good time during the period of a contested prison transfer had no practical effect on the duration of the prisoner's sentence because he was paroled approximately sixteen years before his release date). The same is true for the residential and employment privileges that Darby claims he has also lost. See Davis v. Norris, 230 Fed.Appx. 636, 637, 2007 WL 2142391 (8th Cir. 2007) (unpublished per curiam); cf. Ware v. Morrison, 276 F.3d 385, 387-388 (8th Cir. 2002).

Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002); see Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974); see also Dible v. Scholl, 506 F.3d 1106, 1110 (8th Cir. 2007).  In this case, Darby's only complaint about the procedure employed was the decision of the Adjustment Committee not to obtain the testimony of the Fargo probation officer who Darby claims would have testified that the NDSP did not offer relevant treatment.

The right of a prisoner to call witnesses at a prison disciplinary proceeding is not unqualified. See Wolff v. McDonnell, 418 U.S. at 566; Turner v. Caspari, 38 F.3d 388, 391 (8th Cir. 1994).   In particular, "[p]rison officials are accorded great discretion to refuse to call witnesses who are irrelevant, unnecessary or who may undermine prison authority."  Turner, 38 F.3d at 391; see also Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991); Brown v. Frey, 889 F.2d 159, 167-168 (8th Cir. 1989).

Here, the Adjustment Committee provided a written explanation for not calling Darby's witness, see Ponte v. Real, 471 U.S. 491, 497 (1985), which was that all prisoners were required to complete an assessment administered by the NDSP's treatment department.  Essentially, this was a determination that Darby's witness had no relevant evidence to provide with respect to the issue at hand, *i.e.*, whether Darby refused to comply with the mandatory assessment.  Under these circumstances, the Adjustment Committee's good faith determination was not a violation of due process - even assuming Darby had a liberty interest at stake and was entitled to the full complement of procedures spelled out in Wolff v. McDonnell, supra.[3]  See, e.g., Brown v. Frey, 889 F.2d at 168.

### C. Fifth Amendment

---

[3] As noted in the prior footnote, this may be in doubt.  And, if there is no protected liberty interest, then the full complement of Wolff v. McDonnell procedures likely was not required - at least as a matter of federal due process. See Sandin, 515 U.S. at 483-486 & n.11; Calhoun v. Missouri Dept. of Corrections, No. 4:07CV1284 CDP, 2009 WL 3756420, at *9 (E.D. Mo. Nov. 9, 2009).

The Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court held that it "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).

Darby contends that his participation in the mandatory mental health appraisal would have required him to waive his Fifth Amendment rights in the sense that he would have been required to answer questions regarding past drug use and criminal activity. Even assuming that to be true,[4] the loss of the right to accumulate future good time and the claimed denial of certain residential and work privileges are not the kind of compulsions that invoke Fifth Amendment rights.

The Supreme Court in McKune v. Lile, 536 U.S. 24, 37-38 (2002) (plurality opinion with O'Connor, J., concurring), held that a prison rehabilitation program does not violate the self-incrimination clause if "the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." While the adverse consequences in McKune involved transfer to a higher security, less comfortable facility, id. at 38-39, the Eighth Circuit has applied the rationale

---

[4] Here, this appears to be a matter of speculation in terms of the present record. Darby has not pointed to any specific questions that he was likely to be asked where the answers might incriminate him in future proceedings. See Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478-481 (1972); United States v. Antelope, 395 F.3d 1128, 1133-1135 (9th Cir. 2005); cf. Minnesota v. Murphy, 465 U.S. 420, 436 (1984); Ueckert v. C.I.R., 721 F.2d 248, 250 (8th Cir. 1983) (per curiam).

of McKune to the denial of good time. In Entzi v. Redmann, 485 F.3d 998, 1004 (8th Cir. 2007), the court made the following alternative finding:

> Applying the Supreme Court's decision in McKune, the Tenth Circuit has concluded that the loss of good time credits does not amount to "compulsion" that violates the Fifth Amendment, even where an inmate was required to discuss uncharged sex offenses. Searcy v. Simmons, 299 F.3d 1220, 1222, 1227 (10th Cir.2002). Entzi was directed to participate in sex offender treatment and to discuss only his offenses of conviction, after a fair criminal process, as part of a legitimate rehabilitation program that serves an important social purpose. McKune, 536 U.S. at 41, 122 S.Ct. 2017 (plurality opinion). The North Dakota Department of Corrections has the exclusive discretion to determine whether an offender should be credited with a performance-based sentence reduction. N.D. Cent.Code 12-54.1-01; State v. Trieb, 516 N.W.2d 287, 292 (N.D.1994). The loss of an opportunity for such a discretionary sentence-reduction credit is not among the consequences for noncompliance that go "beyond the criminal process and appear, starkly, as government attempts to compel testimony." McKune, 536 U.S. at 53, 122 S.Ct. 2017 (O'Connor, J., concurring). Consistent with Searcy, we therefore hold alternatively that North Dakota's conditioning of sentence-reduction credits on participation in the sex offender treatment program did not contravene the self-incrimination clause of the Fifth Amendment.

Entzi v. Redmann, 485 F.3d 998, 1004 (8th Cir. 2007). And, based on the foregoing, there is no reason to believe the Eighth Circuit would come to a different conclusion with respect to the claimed loss of residential and work privileges. Hence, Darby's Fifth Amendment claim fails.

### D.    Equal Protection

The Equal Protection Clause requires the government to treat such similarly situated persons alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Murphy v. Missouri Department of Corrections, 372 F.3d 979, 984 (8th Cir. 2004). Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause. See Kevan v. Smith, 100 F.3d 644, 647-648 (8th Cir. 1996). Thus, the initial inquiry in any equal protection claim is whether the plaintiff has established that he was treated differently than others to which he is similarly situated. See id.

Here, the NDSP requires all inmates to undergo a mental health appraisal, and the discipline imposed for failing to comply was typical.  Thus, Darby does not have a viable equal protection claim.

**E.      Retaliation**

Retaliation for the exercise of a constitutional right is itself a constitutional violation.  See, e.g., Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) ("An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights.").  A retaliation claims fails, however, if the allegedly retaliatory disciplinary conduct was taken because of the actual violation of a prison rule and there is "some evidence" to show the inmate violated the prison rule.  Id. at 829.

As already discussed, there is more than "some evidence" supporting Darby's administrative conviction.  Hence, the retaliation claims fails.

**F.      Eighth Amendment**

Darby claims that discipline imposed by the NDSP amounts to cruel and unusual punishment in violation of the Eighth Amendment.  This claim also fails. The loss of certain privileges--such as favorable job or housing assignments and good time -- does not constitute "cruel and unusual punishment" within the meaning of the Eighth Amendment.  See Carroll v. Simmons 89 Fed. Appx. 658, 661-62 (10th Cir. 2004); Beste v. Anderson, Civil No. 05- 2907, 2006 WL 1581360, *3 (D. Minn. 2006) (the allegation that the loss of good conduct time constitutes cruel and unusual punishment "falls far short of the level of conduct prohibited by the Eighth Amendment."); see also Women Prisoners of Dist. of Columbia Dept. of Corrs. v. Dist. of Columbia; 93 F.3d 910 (D.C. Cir. 1996) (prisoners have no constitutional right to work); Inmates of Occoquan v. Barry, 844

F.2d 828 (D.C. Cir. 1988) (limited work opportunities do not equate with punishment); Sowell v. Israel, 500 F. Supp. 209, 211 (D. Wis. 1980) (prisoners have no constitutionally protected interests in particular job assignments).

### G. Double Jeopardy

In a purported "supplement" to the initial complaint, Darby contended that his double jeopardy rights were violated. (Docket No. 11). It does not appear, however, that this claim was included in his amended complaint. But, even if it was, the Double Jeopardy Clause protects against three distinct abuses, none of which apply here: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Darby has failed to state a viable double jeopardy claim.

### H. Malicious Prosecution

Darby contends that the issuance of an incident report documenting his refusal to submit to an evaluation in 2007 was tantamount to malicious prosecution. In the Eighth Circuit, malicious prosecution claims are not actionable under § 1983 because such a claim does not allege a constitutional injury. Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000); see Pitt v. Dist. of Columbia, 491 F.3d 494, 511 (D.C. Cir. 2007) (noting that only the Eighth Circuit has held malicious prosecution is not actionable under § 1983).

But, even if such a claim is actionable under § 1983 and can be premised upon the prosecution of prison disciplinary proceedings, the prisoners "must file and prevail in the established prison administrative process before they can assert a malicious prosecution claim regarding

proceedings within the prison system." Boyd v. Driver, Civil Action No. V-06-022, 2008 WL 818328 (S.D. Tex. March 24, 2008) (relying on Spicer v. Collins, 9 F. Supp. 2d 673, 685 (E.D. Tex. 1998)). This would be in keeping with the well-established rule that favorable termination is an essential element of a claim of malicious prosecution. See, e.g., Heck v. Humphrey, 512 U.S. 477, 484 (1994); Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 263 (8th Cir. 1979); Kummer v. City of Fargo, 516 N.W.2d 294, 298 (N.D. 1994); see generally Restatement (Second) of Torts § 658 (1977). Here, Darby has exhausted all of his administrative appeals and has been denied relief. Thus, he cannot satisfy an essential element of a claim for malicious prosecution, and the claim fails for that reason as well.

### I. Official capacity claims

A lawsuit against a state employee in his or her official capacity is the same as suing the state, which has immunity under the Eleventh Amendment for any claims for damages in an action brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999); see also Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) (discussing distinctions between individual and official capacity claims). In addition, states and their agencies are not "persons" within the meaning of § 1983 and are not proper parties for this reason as well. Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 & 70 (1989); Alsbrook, 184 F.3d at 1010.

In this case, the amended complaint makes clear that Darby is suing Warden Schuetzle in both his official and personal capacities. Since Warden Schuetzle is a state employee, Darby's

request for monetary damages against him in his official capacity must be dismissed on Eleventh Amendment and Will grounds, even if he had a cognizable claim.[5]

### III. RECOMMENDATION

Based upon the foregoing, it is hereby **RECOMMENDED** that the defendant's motion for summary judgment (Docket No. 19) be **GRANTED** and Darby's complaint be dismissed with prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 24th day of February, 2010.

>                            */s/ Charles S. Miller, Jr.*
>                            Charles S. Miller, Jr.
>                            United States Magistrate Judge

---

[5] Given the conclusion that there has been no violation of Darby's constitutional rights, the court need not further consider the defendant's argument for qualified immunity. Cavataio v. City of Bella Villa, 570 F.3d 1015, 1020 n.4 (8th Cir. 2009).